IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CHRISTOPHER K. BLACKLOCK,**

                **Petitioner,**

    v.                                                                 **CASE NO. 23-3253-JWL**

**DAN SCHNURR,**

                **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner and Kansas state prisoner Christopher K. Blacklock. It comes before the Court on Petitioner's response (Doc. 4) to this Court's Notice and Order to Show Cause (NOSC) (Doc. 3) regarding timeliness. The Court has reviewed Petitioner's response and has liberally construed the arguments therein and, for the reasons explained below, will direct Respondent Dan Schnurr to prepare and submit a limited pre-answer response addressing Petitioner's argument that he is entitled to the actual innocence exception to the federal habeas statute of limitations.

**Background**

In 2010, Petitioner, Leshaun Curtis, Ziahdrick Williams, and Eric Blake Eakin drove from Texas to Iowa in two cars, transporting marijuana that was sold in Iowa. *State v. Blacklock*, 2014 WL 3731885, *1 (Kan. Ct. App. July 25, 2014) (unpublished opinion) (*Blacklock I*), *rev. denied* June 29, 2015. On the way back to Texas, "Williams drove one vehicle with [Petitioner] as his passenger, and Curtis drove the other vehicle with Eakin as his passenger." *Id.* During the drive through Johnson County, Kansas, Petitioner stabbed Williams multiple times; their vehicle stopped after it hit a concrete barrier wall. *Id.* at *2. A passing highway patrol trooper stopped and

1

saw Williams and then Petitioner get out of the vehicle and run towards him.[1] *Id.* Petitioner stated that he had stabbed Williams in self-defense based on his belief that Curtis had killed Eakin and his belief that Curtis and Williams had agreed to kill Petitioner the next time the vehicles stopped. *Id.* at *2-3, *6. Williams ultimately died from the stab wounds. *Id.* at *2.

Petitioner was charged in the District Court of Johnson County, Kansas with one count each of first-degree murder, possession of drug paraphernalia, and possession of marijuana with intent to distribute. *Id.* at *2. At the jury trial, Petitioner continued to assert self-defense and "[h]e asked the jury, if anything to find him guilty of voluntary manslaughter based on imperfect self defense." *Id.* at *7. Curtis testified at Petitioner's trial, stating that he had only met Petitioner a couple of times but had grown up with Eakin and Williams. *Id.* at *3. He further "testified that at the time of the trial, he was in prison in Kansas because he pled guilty to one count of possession with intent to distribute marijuana for his role in the events surrounding the case. He testified that he received no leniency for his testimony at [Petitioner's] trial." *Id.* at *4.

The jury convicted Petitioner of second-degree murder, possession of marijuana with intent to distribute, and possession of drug paraphernalia and the state district court sentenced Petitioner to 311 months in prison. (Doc. 1, p. 1.) On direct appeal, the Kansas Court of Appeals (KCOA) affirmed Petitioner's convictions and sentences and the Kansas Supreme Court (KSC) denied Petitioner's petition for review on June 29, 2015. *Id.* at 2; *Blacklock I*, 2014 WL 3731885, at *1.

On June 8, 2016, Petitioner filed in state district court a motion seeking habeas corpus relief under K.S.A. 60-1507. (Doc. 1, p. 3.) The court denied relief and, on December 17, 2021, the KCOA affirmed the denial. *Id.* at 3-4; *Blacklock v. State*, 2021 WL 5991884, *1 (Kan. Ct. App. Dec. 17, 2021) (unpublished) (*Blacklock II*), *rev. denied* Nov. 23, 2022. The KSC denied

---

[1] The Court acknowledges Petitioner's clarification in the response that he was not "chasing" Williams and, instead, he simply ran in the same direction as Williams because he "wonder[ed] what was going on." (Doc. 4, p. 27.)

Petitioner's petition for review on November 23, 2022.

On November 15, 2023, Petitioner placed into the prison mailing system the pro se petition for federal writ of habeas corpus pursuant to 28 U.S.C. § 2254 that is now before this Court. (Doc. 1, p. 14.) After reviewing the petition, the Court issued an NOSC setting forth the applicable law for calculating the deadline to timely file a § 2254 petition, applying the law to this matter, and concluding that the deadline for Petitioner to file his petition was March 16, 2023. (Doc. 3, p. 3-5.) The Court further explained that the AEDPA statute of limitations is subject to equitable tolling and an exception in cases of actual innocence. *Id.* at 5-7. Based on the information before the Court, however, neither applied, so the Court directed "Petitioner to show cause in writing why this matter should not be dismissed as time-barred." *Id.* at 7. Petitioner timely filed his response.[2] (Doc. 4.) Therein, he argues that the one-year limitation period expired on November 23, 2023, so his petition was timely filed and, in the alternative, he asserts entitlement to the actual innocence exception to the statute of limitations. *Id.* at 12.

**Analysis**

**Timeliness**

Petitioner first contends that his petition was timely filed. He accurately points out that he filed the current federal habeas petition within one year of the KSC's November 2022 order denying the petition for review of the KCOA's opinion affirming the denial of K.S.A. 60-1507

---

[2] Petitioner's response consists of 178 pages. (Doc. 4.) The Court will not detail each page specifically in this memorandum and order, but Petitioner is assured that the Court has read and carefully considered the entire response. Moreover, because of Petitioner's pro se status, the Court has liberally construed the response and all exhibits included therein. That being said, the response contained many unnecessary pages, including documents already filed with this Court, a copy of the NOSC issued by this Court, and multiple copies of documents. (*See, e.g.*, Doc. 4, p. 3-10 (copy of NOSC), p. 93-96 (copy of affidavit already filed); p. 11 and 102 (identical copies of 2022 mandate); p. 35-46 and 103-16 (copies of "Amended/Supplemental K.S.A. 60-1507 Petition and Memorandum of Law in Support").) This kind of duplicative filing unnecessarily consumes the Court's resources. *See In re McDonald*, 489 U.S. 180, 184 (1998). Petitioner is instructed to ensure that any future filings he makes with this Court include only relevant documents that are not already filed in this case and are not duplicated within the same submission.

relief. But the timeliness of a federal habeas petition filed by a state prisoner is not calculated from the date Kansas state courts denied relief in the most recent related state-court action. As the NOSC explained, the one-year limitation period generally runs from the date the judgment becomes "final," as provided by § 2244(d)(1)(A). (Doc. 3, p. 3 (citing *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).) The United States Supreme Court has held that a judgment is final for purposes of the federal habeas statute of limitations when the opportunity for *direct appeal* and review by the United States Supreme Court is exhausted. (*See* Doc. 3, p. 3.) This is because the judgment being challenged in a § 2254 is the judgment that caused the petitioner to be held in custody. *See* 28 U.S.C. § 2254(a).

In this matter, that means that judgment was final when Petitioner's direct appeal was complete and the opportunity to petition the United States Supreme Court for certiorari expired. That occurred on September 28, 2015, and the one-year federal habeas statute of limitations began to run on September 29, 2015. *Id.* at 3-4. Even though the one-year period was paused during Petitioner's K.S.A. 60-1507 proceedings, it did not restart at the conclusion of those proceedings. *See id.* at 3-5. Petitioner does not assert that he is entitled to additional statutory or equitable tolling, so the Court maintains its earlier conclusion that the petition in this matter was not timely filed.

**Actual Innocence Exception**

Petitioner also argues that he is entitled to the actual innocence exception to the federal habeas statute of limitations. (Doc. 4, p. 12-13.) As explained in the NOSC:

> To obtain the actual innocence exception, Petitioner is not required to conclusively exonerate himself. *See Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021). Rather, he must identify "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). He "must establish that, in light of [this] new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell* 547 U.S. 518, 536-37 (2006) (quoting *Schlup*,

4

>513 U.S. at 327). If Petitioner wishes to assert the actual innocence exception, he must identify for the Court the "new reliable evidence" not presented at trial that makes it "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."

(Doc. 3, p. 5-6.)

Liberally construing the pro se response, Petitioner identifies the following as new reliable evidence: (1) portions of state-court transcripts; (2) caselaw; (3) an argument that the Kansas courts lacked jurisdiction and that two of his convictions were not supported by sufficient evidence; (4) an affidavit completed by Petitioner; (5) evidence of Williams' criminal history; and (6) statements from Ronrico Nesbitt. (Doc. 4, p. 13, 21, 48-49, 121-24, 142.) Each will be addressed below.

First, to the extent that Petitioner relies on state-court transcripts, caselaw, or newly realized arguments, those are not the type of new reliable evidence that support application of the actual innocence exception. *See Schlup*, 513 U.S. at 324 (identifying as "new reliable evidence . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"); *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures."); *Ridley v. Williams*, 2023 WL 5622928, *2 (10th Cir. Aug. 31, 2023) (unpublished) (discovery of an alleged lack of jurisdiction not new reliable evidence that leads to actual innocence exception).

Next, Petitioner points to his own affidavit as new reliable evidence. Liberally construing the affidavit, Petitioner asserts therein that he and Curtis—the driver of the other car during the events that led to Petitioner's 2011 convictions—went to high school in Hempstead, Texas with Sarah F. Hill, who later was the prosecutor at Petitioner's 2011 criminal trial in Kansas. (Doc. 1-1, p. 58-61.) More specifically, Petitioner alleges that on June 4, 1993, while he was a ninth-grader, he "was introduced to" Hill and a third-party told Petitioner that Hill was about to join the Crips. (Doc. 1-1, p. 57, 61.) The affidavit further alleges that Hill was in four or five classes with Curtis,

who was also a member of the Crips; it asserts that Hill became a Crip in June 1993; and it strongly implies that Hill was involved in the murder of a Hempstead police officer around the same time. *Id.* at 58-61. To support these allegations, Petitioner sets forth his own memories of the events and what he was told by others at the time. *Id.*

Petitioner filed the affidavit with his petition and, in his response to the NOSC, he reemphasizes the allegations therein.[3] (Doc. 4, p. 13-15; 93-96.) He acknowledges in his response that Hill may not have been involved in the 1993 murder, but he maintains that she joined the Crips on June 4, 1993. *Id.* at 13-14. Petitioner suggests that the gang affiliation between Hill, Curtis, and Williams led to Hill agreeing to a favorable plea agreement for Curtis and that she and Curtis misrepresented the terms of the agreement at Petitioner's trial by stating that Curtis did not receive leniency in exchange for his testimony against Petitioner. *Id.* at 17-18. Petitioner argues that this misrepresentation[4] meant that information relevant to Curtis' credibility was unconstitutionally withheld from the trial jury and if it had been disclosed, the trial result would have been different. *Id.* at 19-20. Liberally construing the response, Petitioner may also intend to argue that had the jury known of Hill's gang affiliation, it would not have convicted Petitioner.

As stated above, in order to qualify for the actual innocence exception, Petitioner must identify "new reliable evidence" and show that in light of the identified evidence, it is more likely

---

[3] Petitioner also adds that another individual from Hempstead, Texas, who was there on the day that Hill "was put on" as a Crip, worked from 2018-2022 as a correctional officer in Lansing, Kansas, where he and Plaintiff spoke about racial profiling. (Doc. 4, p. 14-15.)

[4] The state courts have rejected Petitioner's factual assertion that Curtis received "leniency from the State because he agreed to testify against Blacklock." *Blacklock II*, 2021 WL 5991884, at *5 (noting that the district court had found the opposite and that Petitioner "failed to present us with any reason to question the district court's ruling on this issue"). "'[W]hen a state court has made a factual determination bearing on the resolution of a *Schlup* [actual innocence] issue, the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.'" *Taylor*, 7 F.4th at 932 (quoting *Fontenot*, 4 F.4th at 1032). Petitioner has not provided clear and convincing evidence that Curtis received leniency in exchange for his testimony at Petitioner's trial. To the contrary, although the documents submitted with the response indicate that Petitioner *believes* this leniency occurred, the evidence now before the Court reflects that it did not. (*See, e.g.*, Doc. 4, p. 123, 132, 134, 167.)

than not that a reasonable juror would have reasonable doubt as to his guilt. *See Fontenot*, 4 F.4th at 1030. The Tenth Circuit has instructed that "new" evidence means simply "evidence that was not considered by the fact-finder in the original proceedings." *See Taylor*, 7 F.4th at 927. The information now before this Court reflects that none of the information in the affidavit was admitted at Petitioner's 2011 trial; thus, it is new evidence. As noted above and in the NOSC, however, the new evidence also must be reliable. The United States Supreme Court has recognized that where newly presented evidence calls into question the credibility of witnesses presented at trial, a federal "habeas court may have to make some credibility assessments." *See Schlup*, 513 U.S. at 330. In other words, this Court must determine whether the new evidence Petitioner has identified is reliable. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013) (quoting *Schlup*, 513 U.S. at 332, for the statement that "'[a] court may consider how . . . the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]'").

The Court concludes that the affidavit in this matter is not reliable evidence. It is difficult to credit Petitioner's assertion that he did not recognize Hill during the criminal trial in 2011 but he made the connection with reliable certainty nearly 12 years later. (*See* Doc. 1-1, p. 57 (noting the trial was 18 years after the events in the affidavit and that Petitioner had "to think back and try to remember almost 30 years ago what transpired").) The timing of the affidavit does not support a finding that the statements therein are credible or reliable. *See McQuiggin*, 569 U.S. at 399 (holding that "timing [is] a factor relevant in evaluating the reliability of a petitioner's proof of innocence"). Moreover, although Petitioner, as the affiant, swears in the affidavit that the statements therein "are true and correct to the best of [his] knowledge," there is no indication that Petitioner made these statements under penalty of perjury. *See* 28 U.S.C. § 1746 (setting forth federal procedure for evidencing a matter by sworn declaration or affidavit).

Similarly, although the affidavit bears a notary stamp, the stamp merely states when the notary's appointment expires. There is no indication of the date on which the document was notarized and no indication that the notary witnessed anything more than Petitioner's signature. For all of these reasons, the Court concludes that the affidavit is not reliable evidence. *Cf. Scott v. Bridges*, 2023 WL 5016642, *11 (E.D. Okla. Aug. 7, 2023) (unpublished opinion and order) (finding unreliable an unsworn letter from the petitioner's son and documents referred to but not presented); *Gutierrez v. Patton*, 2014 WL 6603423, *3-4 (W.D. Okla. Nov. 19, 2014) (unpublished order adopting report and recommendation) (finding unreliable and not credible a statement that purportedly exonerated the petitioner but was not made upon penalty of perjury or oath or affirmation).

Even setting aside the affidavit's reliability, it does not constitute "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *See Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted). As the Court noted in the NOSC:

> [T]he only "new" information in the affidavit is the prosecutor's alleged gang involvement more than 17 years before the trial. Assuming for the sake of argument that this information is accurate, it might show an improper motive by the prosecutor, but the Court cannot conclude that it demonstrates *factual* innocence. For purposes of the actual innocence exception to the AEDPA statute of limitations, "[a]ctual innocence means 'factual innocence not mere legal insufficiency.'" *O'Bryant v. Oklahoma*, 568 Fed. Appx. 632, 637 (10th Cir. 2014) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). This is because the actual innocence exception exists to provide an avenue to remedy "the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623-24.
>
> The testimony and evidence admitted at trial included incriminating statements by Petitioner that he had stabbed the victim; a witness who saw Petitioner [run after] the victim, who was "bleeding profusely," out of the car in which they were the only two individuals; Petitioner's admission to police that he and the others involved were transporting drugs; and Petitioner's identification of a knife as the knife with which he stabbed the victim, who later died. It is unlikely that this evidence would have been significantly undermined by evidence that the

> prosecutor was a member of the same gang as the victim and defendant more than 10 years before the events underlying the prosecution. In other words, on the facts now before the Court, it does not seem more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt had they known about the prosecutor's alleged previous gang involvement.

(Doc. 3, p. 6-7.)

In his response, Petitioner emphasizes that although he admitted to stabbing Williams, he has consistently maintained that he did so in self-defense. (Doc. 4, p. 16.) The Tenth Circuit has not foreclosed the possibility that evidence in support of an affirmative defense can establish actual innocence. *See Pacheco v. Habti*, 62 F.4th 1233, 1241 n.8 (10th Cir. 2023). It has, however, recognized the difference between (1) an actual innocence claim that "'boils down to asserting that [the petitioner] is legally innocent because his conduct is justified or mitigated by the doctrines of self-defense or heat of passion, on which he maintains the jury was not accurately instructed,'" which is *not* a viable actual innocence argument, and (2) an actual innocence claim based on "new evidence clearly establishing self-defense that negated guilt," which may be a viable actual innocence argument. *Id.* (quoting and citing *Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002)).

Nevertheless, the actual innocence exception "is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (quotation marks and citation omitted). As explained above, the new evidence set forth in Petitioner's affidavit is not reliable and, in addition, it does not relate in any obvious way to whether Petitioner was acting in self-defense when he stabbed Williams. Despite the NOSC pointing out this lack of relevance, Petitioner has not satisfactorily explained how Hill's alleged gang membership or activity in Texas in 1993 could have led to Petitioner's acquittal of any of the Kansas crimes of

9

which he was convicted in 2011. At best, Petitioner appears to argue that there is new evidence of prosecutorial bias against him and motive for the prosecutor to ensure Petitioner was found guilty. But he has not shown that is "that it is more likely than not that no reasonable juror would have convicted him" in 2011 in light of the events and relationships detailed in the affidavit. Accordingly, Petitioner is not entitled to the actual innocence exception to the one-year federal habeas statute of limitations based on the evidence in the affidavit.

The final two items identified as new reliable evidence are evidence of Williams' criminal history and statements from Ronrico Nesbitt. According to documents included with Petitioner's response, Williams had a previous conviction of aggravated assault with a handgun. Petitioner argues that showing the jury this criminal history would have made it more likely than not that the jury would have fully accepted his self-defense theory and that no reasonable juror would have convicted Petitioner. (Doc. 4, p. 140-43, 150-51.) With respect to Nesbitt's testimony, Petitioner has provided in his response a notarized statement from Barbara Baker, an investigator who spoke to Nesbitt and collected his statement orally. In that statement, which Baker affirms she "would give . . . under oath," she relates that Nesbitt told her that the men Petitioner was on the trip with would have killed him and that Petitioner was only protecting himself. *Id.* at 153-54. There is also a document, purportedly signed by Nesbitt, that states Curtis told Nesbitt about the 2010 events with Petitioner and Curtis said that he was supposed "to leave Blacklock somewhere." *Id.* at 155.

From the information now before the Court, both Williams' criminal history and Nesbitt's statements appear to be "new" evidence. Moreover, a journal entry reflecting Williams' prior conviction is reliable evidence. Less clear is the reliability of Nesbitt's statements and whether it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt of Williams' murder in light of this new evidence.

10

In order to resolve these questions and thus resolve whether Petitioner has shown entitlement to the actual innocence exception, this Court must "consider all the evidence, old and new, incriminating and exculpatory" and conduct "'a holistic judgment about all the evidence[] and its likely effect on reasonable jurors applying the reasonable-doubt standard.'" *See Fontenot*, 4 F.4th at 1031-32 (internal quotation marks and citations omitted). This type of holistic judgment requires the examination of the record of Petitioner's criminal proceedings, which are not currently before this Court. In addition, it is possible that Respondent may decide, for strategic reasons, to withhold or relinquish the affirmative defense of timeliness, in which case the more detailed analysis is unnecessary, as timeliness would not be at issue. *See Wood v. Milyard*, 566 U.S. 463, 472 (2012). Accordingly, the Court concludes that a limited Pre-Answer Response (PAR) from Respondent is appropriate. *See id.* at 467; *Denson v. Abbott*, 554 F. Supp. 2d 1206 (D. Colo. 2008).

The Court therefore will direct Respondent to file a PAR that either (1) presents argument related to whether this matter was timely filed and whether Petitioner is entitled to the actual innocence exception based on Williams' criminal history and/or Nesbitt's statements, or (2) advises that Respondent relinquishes or declines to assert the affirmative defense of timeliness. If Respondent chooses to assert the affirmative defense of timeliness,[5] Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings complained of by Petitioner.[6] Petitioner will be given the opportunity to file a written reply to the PAR if he wishes to do so.

---

[5] To be clear, the Court recognizes that Respondent may choose not to contest the timeliness of this matter. If Respondent intends to pursue the affirmative defense of timeliness in this matter, however, he should set forth in the PAR his arguments on that point. The Court anticipates resolving timeliness as a threshold issue in this federal habeas action, so a statement by Respondent that he reserves the right to argue timeliness issues, including the actual innocence exception, in the Rule 5 answer will not suffice to satisfy this order without additional explanation.

[6] These records are necessary for the Court to conduct the required holistic review of the evidence presented at trial and consider how a reasonable juror's verdict would be affected by inclusion of the new reliable evidence Petitioner has identified. *See Fontenot*, 4 F.4th at 1031-32. Respondent need not at this time provide to the Court the records and transcripts of any post-conviction proceedings, as the focus will be on what was presented to the jury.

11

**IT IS THEREFORE ORDERED THAT** Respondent is granted to and including **March 5, 2024**, in which to file a limited Pre-Answer Response that complies with this order. If Respondent argues in the PAR that this matter is untimely and that Petitioner has not shown entitlement to the actual innocence exception, Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings that led to the convictions at issue in this matter. When the timeliness issue is resolved, the clerk of this Court will return to the clerk of the proper state court all state court records and transcripts.

**IT IS FURTHER ORDERED THAT** Petitioner is granted to and including **April 5, 2024**, to file a reply to the PAR if he wishes to do so.

**IT IS FURTHER ORDERED THAT** the clerk of this Court transmit copies of this order to Petitioner and to the office of the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:   This 31st day of January, 2024, at Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge